## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SEKUK GLOBAL ENTERPRISES, Individually )
and On Behalf of All Others Similarly Situated, )
                                     )
          Plaintiff, )
                                     )
      v.                         )
                                     )
AGCO CORP., ROBERT J. RATLIFF AND )
ANDREW H. BECK, )
                                   )
          Defendants. )

No. **04C 0961**

JUDGE KENNELLY

*JURY TRIAL DEMANDED*

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

## CLASS ACTION COMPLAINT
## FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which

included a review of United States Securities and Exchange Commission ("SEC") filings by AGCO

Corp. ("AGCO" or the "Company"), as well as regulatory filings and reports, securities analysts'

reports and advisories about the Company, press releases and other public statements issued by the

Company, and media reports about the Company, and Plaintiff believes that substantial additional

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for

discovery.

### NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of purchasers of the securities of

AGCO between February 6, 2003 and February 5, 2004, inclusive (the "Class Period"), seeking to

pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein occurred in substantial part in this Judicial District. The Company maintains it headquarters for its parts division within this judicial district.

5.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

*Plaintiff*

6.      Sekuk Global Enterprises, as set forth in the accompanying certification, incorporated by reference herein, purchased the securities of AGCO at artificially inflated prices during the Class Period and has been damaged thereby.

*Defendants*

7.      AGCO is a Delaware corporation and maintains its principal executive offices at 4205 River Green Parkway Duluth, GA 30096. AGCO manufactures and distributes agricultural

2

equipment throughout the world. The Company sells a range of agricultural equipment and related replacement parts, including tractors, combines, hay tools, sprayers and forage equipment.

8.　　(a)　　Robert J. Ratliff ("Ratliff") was Chairman, President and Chief Executive Officer of AGCO.

(b)　　Andrew H. Beck ("Beck") was, at all relevant times, Senior Vice President and Chief Financial Officer of AGCO.

(d)　　Ratliff and Beck are collectively referred to herein as the "Individual Defendants."

9.　　Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.　　It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of AGCO, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business,

3

operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with AGCO, each of the Individual Defendants had access to the adverse undisclosed information about AGCO's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these

4

adverse facts rendered the positive representations made by or about AGCO and its business issued or adopted by the Company materially false and misleading.

13.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of AGCO common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding AGCO's business, operations, management and the intrinsic value of AGCO common stock; (ii) enabled the Company to complete a private offering of its Convertible Senior Subordinated Notes whereby the Company reaped approximately $175 million in proceeds; and (iii) caused Plaintiff and other members of the Class to purchase AGCO common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of AGCO between February 6, 2003 and February 5, 2004, inclusive (the

5

"Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, AGCO common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by AGCO or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

6

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of AGCO; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

20. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background Facts

21. AGCO is primarily engaged in the manufacture and distribution of agricultural equipment and related replacement parts worldwide. The Company sells a full range of agricultural equipment, including tractors, combines, self-propelled sprayers, hay tools, forage equipment and implements..

22. Throughout the Class Period, AGCO issued press releases touting their increases in revenue from quarter to quarter and filed their 10-K which stated that the Company recognized revenue "when title and risks of ownership have been transferred to the independent dealer, distributor or other customer."

23. In truth and in fact, however, AGCO was recognizing revenue on orders when equipment remained on its premises after being invoiced to the customer, known as "bill and hold" transactions.

7

24.     On February 5, 2004, AGCO shocked the market when it announced that it received an informal inquiry from the SEC asking AGCO for its policies and related information with regard to AGCO's accounting for revenue recognition (particularly bill and hold transactions), sales and sales returns and allowances, plant and facility closing costs and reserves, and personal use of corporate aircraft. With regards to the revenue recognition, the Company admitted that it had recorded sales (before discounts and allowances) of approximately $32.8 million at year end of 2003 and $29.9 million at year end of 2002, respectively, where equipment was invoiced but remained on AGCO's premises.

25.     Upon this news, shares of the Company's stock fell approximately 16%, or $3.10 per share, to close at $16.25 per share on extremely high trading volume.

### Materially False And Misleading
### Statements Issued During The Class Period

26.     The Class Period begins on February 6, 2003. On that date, the Company issued a press release announcing its financial results for the fourth quarter and year end of 2002, the period ended December 31, 2002. AGCO reported net income, excluding restructuring expenses, restricted stock compensation and a non-cash deferred tax adjustment, of $0.34 per share for the fourth quarter of 2002. Defendant Ratliff commented positively on the results, stating, in pertinent part, as follows:

> Although our results were adversely affected by restructuring expenses, stock compensation expense and the fourth quarter tax charge, our core operations showed significant improvement in 2002. The improvement demonstrates that our initiatives to expand margins and profitability are effective. While our results were impacted by softness in the North American market, our geographic diversity allowed us to take advantage of stronger markets in Europe and South America. In addition, our focus on working capital reduction in the fourth quarter enabled us to exceed our cash flow targets.

Defendant Ratliff continued, stating, in pertinent part, as follows:

8

We remain focused on improving profitability at current industry levels. Our initiatives to reduce our cost base, rationalize operations, increase productivity and enhance our distribution provide opportunities for continued profit improvement in 2003 and beyond.

27.     On March 17, 2003, the Company filed its Form 10-K for the fourth quarter and year end 2002 with the SEC which confirmed the previously-announced financial results and was signed by defendants Ratliff and Beck, among others. With regard to how the Company recognized revenue, the Company stated, in pertinent part, as follows:

Revenue Recognition

   **Sales of equipment and replacement parts are recorded by the Company when title and risks of ownership have been transferred to the independent dealer, distributor or other customer.** Payment terms vary by market and product with fixed payment schedules on all sales. The terms of sale generally require that a purchase order or order confirmation accompany all shipments. **Title generally passes to the dealer or distributor upon shipment and the risk of loss upon damage, theft or destruction of the equipment is the responsibility of the dealer or distributor.** The dealer or distributor may not return equipment or replacement parts while its contract with the Company is in force. Replacement parts may be returned only under promotional and annual return programs. Provisions for returns under these programs are made at the time of sale based on the terms of the program and historical returns experience. The Company may provide certain sales incentives to dealers and distributors. Provisions for sales incentives are made at the time of sale for existing incentive programs. These provisions are revised in the event of subsequent modification to the incentive program. [Emphasis added.]

28.     On April 24, 2003, the Company issued a press release announcing its financial results for the first quarter of 2003, the period ended March 31, 2003. AGCO reported net income, excluding restructuring expenses, restricted stock compensation and a cumulative effect of accounting change, of $0.21 per share. For the quarter, the Company reported earnings per share including all items of $0.17 per share. Defendant Ratliff commented positively on the results, stating, in pertinent part, as follows:

9

> Despite a challenging industry and operating environment, we are pleased to report earnings improvement over the prior year. In addition, we remain committed to meeting our earnings targets for the full year.

Defendant Ratliff continued as follows:

> We remain confident that AGCO can continue to improve profitability at current industry levels in 2003 and in the future.

29. On May 14, 2003, the Company filed its Form 10-Q for the first quarter of 2003 with the SEC which confirmed the previously-announced financial results and was signed by defendant Beck.

30. On July 24, 2003, the Company issued a press release announcing its financial results for the second quarter of 2003, the period ended June 30, 2003. AGCO reported net sales of $902.7 million and net income, excluding restructuring and other infrequent expenses and restricted stock compensation, of $29.0 million, or $0.38 per share. For the quarter, net income including all items was $15.6 million, or $0.21 per share. Defendant Ratliff commented on the results, stating, in pertinent part, as follows:

> As previously reported, our second quarter results were negatively impacted by production inefficiencies which offset sales improvement and currency benefits. We are committed to improving productivity to realize margin improvement and earnings growth in the second half of the year.

Defendant Ratliff continued, stating, in pertinent part, as follows:

> We are committed to continuing our trend of earnings and margin improvement in 2003. Our manufacturing initiatives and concentration on cost reduction continues to be a major component of our earnings growth targets. Despite the recent issues which impacted the second quarter, we remain confident that these initiatives and other profit improvement strategies will deliver long-term value to our shareholders.

31.     On August 14, 2003, the Company filed its Form 10-Q for the second quarter of 2003 with the SEC which confirmed the previously-announced financial results and was signed by defendant Beck.

32.     On October 22, 2003, the Company issued a press release announcing its financial results for the third quarter of 2003, the period ended September 30, 2003. AGCO reported net sales of $800.3 million and net income, excluding restructuring and other infrequent expenses and restricted stock compensation, of $18.0 million, or $0.24 per share. For the quarter, net income including all items was $16.5 million, or $0.22 per share. Defendant Ratliff commented positively on the results, stating, in pertinent part, as follows:

> As previously reported, our third quarter results were negatively impacted by weaker market conditions in Western Europe, particularly in Germany, as well as the continuation of production inefficiencies in our Beauvais, France manufacturing facility. Despite these challenges, our overall earnings were higher than 2002, with the decline in our European results offset by improved profitability in other markets resulting from stronger market conditions and cost reduction benefits.

33.     On November 14, 2003, the Company filed its Form 10-Q for the third quarter of 2003 with the SEC which confirmed the previously-announced financial results and was signed by defendant Beck.

34.     On December 17, 2003, the Company announced the completion of its private offering of $175,000,000 aggregate principal amount of its Convertible Senior Subordinated Notes due 2033. AGCO also granted the initial purchasers of the notes a 30-day option to purchase up to an additional $26,250,000 aggregate principal amount of the notes. The notes are convertible into shares of AGCO common stock at a conversion rate of 44.7193 shares of common stock per $1,000

11

principal amount of notes, which is equivalent to an initial conversion price of $22.36 per share of common stock, subject to adjustment in certain circumstances.

35. The statements referenced above in ¶¶ 26-28, 30 and 32 were each materially false and misleading when made as they failed to disclose and misrepresented the following material adverse facts which were then known to defendants or recklessly disregarded by them:

(a) that the Company improperly recorded revenue on its "bill and hold" transactions where risk did not pass to the customer;

(b) that the Company recklessly disregarded its own policies regarding recognizing revenue; and

(c) as a result of the foregoing, the Company's net income and earnings per share published during the Class Period were not in accordance with Generally Accepted Accounting Principles and were therefore materially false and misleading.

### The Truth Emerges

36. Then, on February 5, 2004, the Company shocked the market when it issued a press release announcing its fourth quarter and year end results for fiscal 2003, the period ended December 31, 2003. For the quarter, the Company reported net sales of $1,035.1 million and adjusted net income of $30.5 million, or $0.40 per share. For the quarter, net income including all items was $29.8 million, or $0.39 per share. The Company also informed the public regarding an SEC inquiry stating, in pertinent part, as follows:

SEC Inquiry

**Subsequent to year end, AGCO received an informal inquiry from the SEC asking AGCO for its policies and related information with regard to AGCO's accounting for revenue recognition (particularly bill and hold transactions),**

12

**sales and sales returns and allowances, plant and facility closing costs and reserves, and personal use of corporate aircraft.**

**In some cases, AGCO recognizes revenue when equipment remains on its premises after having been invoiced to the dealer (referred to as bill and hold transactions).** These transactions occur at a dealer's request, usually in order to arrange for its own transportation of the equipment. **At December 31, 2003 and 2002, AGCO had recorded sales (before discounts and allowances) of approximately $32.8 million and $29.9 million, respectively, where equipment was invoiced but remained on AGCO's premises. For 2003, if AGCO had recognized revenue only upon shipment of equipment, this would have resulted in an increase in sales of approximately $29.9 million in the first quarter of 2003 and a decrease in sales of approximately $32.8 million in the fourth quarter of 2003. The impact to prior years would be similar, although the amounts would differ depending on the actual level of bill and hold transactions at year end.**

AGCO does not generally permit returns other than returns during annual parts return programs or upon a dealer's termination where applicable law requires AGCO to accept the returns. AGCO provides for sales incentive and parts return allowances at the time of sale or at the time at the program is put in place.

Since its inception, AGCO has acquired new businesses and closed excess facilities. AGCO incurs costs and has established reserves in connection with these facility closures. These costs are reflected as "restructuring and other infrequent expenses" in our consolidated statements of operations and the related reserve activity is disclosed in the footnotes of our consolidated financials statements (see also footnote 2 to these financial statements).

AGCO permits personal use of its corporate aircraft in accordance with a policy authorized by the Board of Directors in 1999. This use is reported to the IRS as compensation to the executive in accordance with IRS regulations and is taken into account - at the IRS amounts - in determining perquisites for purposes of proxy statement disclosure.

AGCO has responded to the SEC's inquiry and intends to cooperate fully with the SEC going forward.

[Emphasis added.]

    37.    Upon this news, shares of the Company's stock fell approximately 16%, or $3.10 per share, to close at $16.25 per share on extremely high trading volume.

13

38.     The market for AGCO's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, AGCO's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired AGCO common stock relying upon the integrity of the market price of AGCO's common stock and market information relating to AGCO, and have been damaged thereby.

39.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of AGCO's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

40.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about AGCO's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of AGCO and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class

14

purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

41.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding AGCO, their control over, and/or receipt and/or modification of AGCO's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning AGCO, participated in the fraudulent scheme alleged herein.

42.     Defendants were further motivated to engage in this course of conduct in order to generate proceeds from a private offering its Convertible Senior Subordinated Notes whereby the Company reaped approximately $175 million in proceeds.

### Applicability Of Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

43.     At all relevant times, the market for AGCO's common stock was an efficient market for the following reasons, among others:

(a) AGCO's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

15

(b) As a regulated issuer, AGCO filed periodic public reports with the SEC and the NYSE;

(c) AGCO regularly communicated with public investors <u>via</u> established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) AGCO was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

44.     As a result of the foregoing, the market for AGCO's common stock promptly digested current information regarding AGCO from all publicly-available sources and reflected such information in AGCO's stock price. Under these circumstances, all purchasers of AGCO's common stock during the Class Period suffered similar injury through their purchase of AGCO's common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

45.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the

statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of AGCO who knew that those statements were false when made.

**COUNT I**

**Violation Of Section 10(b) Of
The Exchange Act Against And Rule 10b-5
Promulgated Thereunder Against All Defendants**

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) enabled the Company to complete a private offering of its Convertible Senior Subordinated Notes whereby the Company reaped approximately $175 million in proceeds; and (iii) caused Plaintiff and other members of the Class to purchase AGCO's common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

48.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for AGCO's common stock in violation of Section 10(b) of the Exchange Act and

17

Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

49.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of AGCO as specified herein.

50.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of AGCO's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about AGCO and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of AGCO common stock during the Class Period.

51.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other

18

defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

52.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing AGCO's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of AGCO's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of AGCO's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was

known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired AGCO common stock during the Class Period at artificially high prices and were damaged thereby.

54.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that AGCO was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their AGCO common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

55.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## COUNT II

### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of AGCO within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and

20

their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.     As set forth above, AGCO and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 6, 2004

SEKUK GLOBAL ENTERPRISES, individually and on behalf of all others similarly situated, Plaintiff

By:

Marvin A. Miller
Jennifer W. Sprengel
Anthony F. Fata
**MILLER FAUCHER & CAFFERTY LLP**
30 North LaSalle Street, Suite 3200
Chicago, Illinois 60602
(312) 782-4880

***Designated Local Counsel***

22

Samuel H. Rudman
David A. Rosenfeld
Mario Alba Jr.
**CAULEY GELLER BOWMAN & RUDMAN, LLP**
200 Broadhollow Road, Suite 406
Melville, New York 11747
(631) 367-7100

Marc A. Topaz
**SCHIFFRIN & BARROWAY, LLP**
Three Bala Plaza East
Suite 400
Bala Cynwyd, Pennsylvania 19004
(610) 667-7706

***Attorneys for Plaintiff***

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Sekuk Global Enterprises, (Plaintiff) declares, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the Complaint and retains Schiffrin & Barroway, LLP and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.     Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff's transactions in the Agco Corporation (NYSE: AG) security that is the subject of this action during the Class Period are as follows:

| No. of Shares | Buy/Sell | Date | Price Per Share |
| --- | --- | --- | --- |
| 100 | Buy | 2/4/03 | $16.10 |
| 25 | Buy | 12/31/03 | $20.13 |

List additional transactions on a separate sheet of paper, if necessary.

5.     During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws: Federated Department Stores and Avery Dennison Corporation.

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of February , 2004.

SEKUK GLOBAL ENTERPRISES

By: _____

Tem Xixev

Civil Cover Sheet



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

## Civil Cover Sheet **04C 0961**

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

**JUDGE KENNELLY**

**Plaintiff(s): Sekuk Global Interprises,**

County of Residence: Oakland County

Plaintiff's Atty: Miller Faucher and Cafferty LLP
30 North LaSalle Street, Suite 3200
Chicago, Illinois 60602
(312) 782-4880

**Defendant(s):ACCRUE SOFTWARE**

County of Residence:

Defendant's Atty:

**MAGISTRATE JUDGE GERALDINE SOAT BROWN**

U.S. DISTRICT COURT
CLERK
04 FEB -6 PM 4:05
FILED FOR DOCKETING
ED-7

II. Basis of Jurisdiction:     **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal Parties **(Diversity Cases Only)**
          Plaintiff:- **N/A**
          Defendant:- **N/A**

IV. Origin :     **1. Original Proceeding**

V. Nature of Suit:     **850 Securities / Commodities / Exchange**

VI. Cause of Action:     **15 U.S.C. §§ 78j(B) and 78t(a)**

VII. Requested in Complaint
          Class Action: **Yes**
          Dollar Demand:
          Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature:

Date: _2-6-04_

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it.
Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size**

1-2

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of

**SEKUK GLOBAL ENTERPRISES,**

v.

**AGCO CORP., et al.,**

Case Number:

 

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Sekuk Global Enterprises, individually and on behalf of all others similarly situated, Plaintiff

---

| **(A)** | **(B)** |
|---|---|
| SIGNATURE *Samuel H. Rudman* | SIGNATURE *Marvin A. Miller* |
| NAME Samuel H. Rudman | NAME Marvin A. Miller |
| FIRM Cauley Geller Bowman & Rudman, LLP | FIRM Miller Faucher and Cafferty LLP |
| STREET ADDRESS 200 Broadhollow Road, Suite 406 | STREET ADDRESS 30 North LaSalle Street, Suite 3200 |
| CITY/STATE/ZIP Melville, New York 11747 | CITY/STATE/ZIP Chicago, Illinois 60602 |
| TELEPHONE NUMBER (631) 367-7100 FAX NUMBER | TELEPHONE NUMBER (312) 782-4880 FAX NUMBER 782-4485 |
| E-MAIL ADDRESS | E-MAIL ADDRESS mmiller@millerfaucher.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 01916769 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES X NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES X NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES X NO ☐ |

| **(C)** | **(D)** |
|---|---|
| SIGNATURE *David H. Rosenfeld* | SIGNATURE *Jennifer W. Sprengel* |
| NAME David H. Rosenfeld | NAME Jennifer W. Sprengel |
| FIRM Same as (A) | FIRM Same as (B) |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER FAX NUMBER | TELEPHONE NUMBER FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS jsprengel@millerfaucher.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06204446 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☒ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☒ NO ☐ |



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

**SEKUK GLOBAL ENTERPRISES,**

v.

Case Number:

**AGCO CORP., et al.**

MAGISTRATE JUD

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR

Sekuk Global Enterprises, individually and on behalf of all others similarly situated, Plaintiff

---

| (E) | (F) |
|---|---|
| SIGNATURE *Mario Alba, Jr.* | SIGNATURE |
| NAME Mario Alba Jr. | NAME Anthony F. Fata |
| FIRM Same as (A) | FIRM Same as (B) |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS afata@millerfaucher.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06269721 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☒ NO |

| (G) | (H) |
|---|---|
| SIGNATURE *Marc A. Topaz* | SIGNATURE |
| NAME Marc A. Topaz | NAME |
| FIRM Schiffrin & Barroway, LLP | FIRM |
| STREET ADDRESS Three Bala Plaza East, Suite 400 | STREET ADDRESS |
| CITY/STATE/ZIP Bala Cynwyd, Pennsylvania 19004 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (610) 667-7706 / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO |